UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEROY RALPH WHITFIELD,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:22-cv-00611-CDB (SS)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY[1]<br><br>(Docs. 20, 24) |

Plaintiff Leroy Ralph Whitfield ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Docs. 20, 24). Upon review of the Administrative Record (Doc. 15-1, "AR") and the parties' briefs, the Court finds and rules as follows.

I.    BACKGROUND

A. Administrative Proceedings and ALJ's Decision

Plaintiff filed a Title II application for disability insurance benefits on January 14, 2020. (AR 165-68). Plaintiff's application was denied initially and upon reconsideration, and Plaintiff

---

[1] Following the parties' expression of consent to magistrate judge jurisdiction for all purposes, this action was reassigned to the undersigned on March 7, 2023, pursuant to 28 U.S.C. § 636(c)(1). (Doc. 22).

1   requested a hearing before an administrative law judge ("ALJ").  (AR 85-89, 93-97, 104-05).  On

2   March 10, 2021, ALJ Roxanne Fuller held a hearing, during which Plaintiff, represented by

3   counsel, and an independent vocational expert testified.  (AR 36-57).  The ALJ issued her

4   decision on May 28, 2021, finding Plaintiff not disabled.  (AR 15-27).  On March 16, 2022, the

5   Appeals Council declined Plaintiff's request for review.  (AR 1-3).

6       In reaching her decision, the ALJ engaged in the five-step sequential evaluation process

7   set forth by the Social Security Administration.  20 C.F.R. §§ 404.1520(a), 416.920(a).  At step

8   one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 5,

9   2018, the alleged onset date.  (AR 17).  At step two, the ALJ determined that Plaintiff had the

10  following severe impairments: "degenerative disc disease; left rotator cuff tear; right knee

11  degenerative disc disease; obesity; and sleep apnea."  (AR 17).  At step three, the ALJ found that

12  Plaintiff did not have an impairment, or combination of impairments, that met or medically

13  exceeds the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

14  1.  (AR 17).

15      The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform

16  sedentary work as defined in 20 C.F.R. § 404.1567(a), with additional limitations.  (AR 18).  The

17  ALJ limited Plaintiff's RFC to occasional pushing or pulling with the left non-dominant arm;

18  occasional climbing of ramps or stairs; never climbing ladders, ropes, or scaffolds; occasional

19  balancing, stooping, crouching, kneeling, and crawling; frequent reaching in front with the left

20  non-dominant arm; occasional reaching overhead with the right arm; never reaching overhead

21  with the left non-dominant arm; frequent but not constant handling objects and fingering with the

22  left non-dominant arm; occasional exposure to extreme cold and excessive vibration; occasional

23  exposure to moving mechanical parts; occasional operating a motor vehicle; and occasional

24  exposure to unprotected heights.  (AR 18).

25      At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant

26  work.  (AR 23-24).  At step five, based on the testimony of the vocational expert, and considering

27  Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could

28  perform jobs that exist in the national economy, such as table worker, document preparer, and

1   surveillance system monitor.  (AR 24-25).  Accordingly, the ALJ found Plaintiff had not been

2   under a disability from November 5, 2018, the alleged onset date, through the date of decision.

3   (AR 25).

4       **B.  Medical Record and Hearing Testimony**

5       The relevant hearing testimony and medical record were reviewed by the Court and will

6   be referenced below as necessary to this Court's decision.

7   **II.    STANDARD OF REVIEW**

8       A district court's review of a final decision of the Commissioner of Social Security is

9   governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

10  Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

11  is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

12  evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

13  conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

14  equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (citation

15  modified).  In determining whether the standard has been satisfied, a reviewing court must

16  consider the entire record as a whole rather than searching for supporting evidence in

17  isolation. *Id.*

18      The court will review only the reasons provided by the ALJ in the disability determination

19  and may not affirm the ALJ on a ground upon which he did not rely.  Social Security Act § 205,

20  42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its

21  judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the

22  evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d

23  1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account

24  of an error that is harmless. *Id.*  An error is harmless where it is "inconsequential to the [ALJ's]

25  ultimate nondisability determination." *Id.* (quotation and citation omitted).  The party appealing

26  the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

27  *Sanders*, 556 U.S. 396, 409-10 (2009).

28      A claimant must satisfy two conditions to be considered "disabled" and eligible for

3

benefits within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  20 C.F.R. § 404.1520(e).  Residual functional capacity ("RFC"), defined

1    generally as the claimant's ability to perform physical and mental work activities on a sustained

2    basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and

3    fifth steps of the analysis.

4          At step four, the Commissioner considers whether, in view of the claimant's RFC, the

5    claimant is capable of performing work that he or she has performed in the past (past relevant

6    work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant

7    work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If

8    the claimant is incapable of performing such work, the analysis proceeds to step five.

9          At step five, the Commissioner considers whether, in view of the claimant's RFC, the

10   claimant is capable of performing other work in the national economy. 20 C.F.R. §

11   404.1520(a)(4)(v). In making this determination, the Commissioner must also consider

12   vocational factors such as the claimant's age, education, and past work experience. *Id.* If the

13   claimant is capable of adjusting to other work, the Commissioner must find that the claimant is

14   not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other

15   work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled

16   to benefits. *Id.*

17         The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*,

18   180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the

19   Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

20   work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2);

21   *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

22   **III.    ISSUES AND ANALYSIS**

23         Plaintiff seeks judicial review of the Commissioner's final decision denying his

24   application. (Doc. 1). Plaintiff raises a single issue: "The ALJ failed to include work-related

25   limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed

26   to offer legitimate reasons for rejecting Plaintiff's subjective complaints." (Doc. 20 at 11).

27

28

1

**A. Legal Standard**

2      The ALJ is responsible for determining credibility,[2] resolving conflicts in medical

3 testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A

4 claimant's statements of pain or other symptoms are not conclusive evidence of a physical or

5 mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at

6 *2 ("an individual's statements of symptoms alone are not enough to establish the existence of a

7 physical or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir.

8 2007) ("An ALJ is not required to believe every allegation of disabling pain or other non-

9 exertional impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674

10 F.3d 1104, 1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. §

11 404.1502(a). Determining whether a claimant's testimony regarding subjective pain or symptoms

12 is credible requires the ALJ to engage in a two-step analysis. *Id.* at 1112. The ALJ must first

13 determine if "the claimant has presented objective medical evidence of an underlying impairment

14 which could reasonably be expected to produce the pain or other symptoms alleged."

15 *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations

16 omitted). This does not require the claimant to show that her impairment could be expected to

17 cause the severity of the symptoms that are alleged, but only that it reasonably could have caused

18 some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

19      If the first step is met and there is no evidence of malingering, "the ALJ must provide

20 'specific, clear and convincing reasons for' rejecting the claimant's testimony." *Treichler v.*

21 *Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281); *see*

22 *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse

23 credibility finding must be based on "clear and convincing reasons"). The ALJ must make

24

25 ───────────

[2] SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation "is not an

26 examination of an individual's character," but an endeavor to determine how "symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3.

27 Nevertheless, the Ninth Circuit continues to reference an ALJ's "credibility assessment" when reviewing claims that an ALJ impermissibly discounted a claimant's testimony. *E.g.*, *Coleman v. Saul*, 979 F.3d

28 751, 756 (9th Cir. 2020).

1    findings that support this conclusion, and the findings must be sufficiently specific to allow a

2    reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds

3    and did not arbitrarily discredit the claimant's testimony.  *Moisa v. Barnhart*, 367 F.3d 882, 885

4    (9th Cir. 2004).

5        The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the

6    claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."

7    *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22,

8    2023), *findings & recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023); *see Record v.

9    Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if

10    the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,'

11    the Court will still defer to the ALJ's decision.") (*quoting Wilson v. Berryhill*, 757 Fed. Appx.

12    595, 597 (9th Cir. 2019)). "The standard isn't whether our court is convinced, but instead,

13    whether the ALJ's rationale is clear enough that it has the power to convince."  *Smartt v.

14    Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (the clear and convincing standard requires an ALJ to

15    show her work).

16        The ALJ may consider numerous factors in weighing a claimant's credibility, including

17    "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

18    prior inconsistent statements concerning the symptoms, and other testimony by the claimant that

19    appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to

20    follow a prescribed course of treatment; and (3) the claimant's daily activities."  *Smolen*, 80 F.3d

21    at 1284.  In evaluating the credibility of symptom testimony, the ALJ must also consider the

22    factors identified in SSR 16-3P.  *Id*. (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.

23    1991)); *accord Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1226 (9th Cir. 2009). These

24    factors include:

25            (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or
            other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The
26            type, dosage, effectiveness, and side effects of any medication an individual takes
            or has taken to alleviate pain or other symptoms; (5) Treatment, other than
27            medication, an individual receives or has received for relief of pain or other
            symptoms; (6) Any measures other than treatment an individual uses or has used
28

7

1    to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for
     15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors
2    concerning an individual's functional limitations and restrictions due to pain or
     other symptoms.
3

4    SSR 16-3P, 2017 WL 5180304, at *7. *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is

5    supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*,

6    533 F.3d at 1039 (citations and internal quotation marks omitted).

7         The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

8    demanding requirement in Social Security cases.'" *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th

9    Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)). "A

10   finding that a claimant's testimony is not credible must be sufficiently specific to allow a

11   reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible

12   grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v.*

13   *Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

14        "The fact that a claimant's testimony is not fully corroborated by the objective medical

15   findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan,* 260 F.3d

16   at 1049; *see* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity

17   and persistence of your pain or other symptoms or about the effect your symptoms have on your

18   ability solely because the objective medical evidence does not substantiate your statements.").

19   Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical

20   record, the ALJ must provide additional reasons for discounting the testimony. *Burch v.*

21   *Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must specify what testimony is not

22   credible and identify the evidence that undermines the claimant's complaints – '[g]eneral findings

23   are insufficient.'" *Id.* (*quoting Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

24        However, the medical evidence "is still a relevant factor in determining the severity of the

25   claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

26   2001). The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical

27   evidence from testimony that is "contradicted" by the medical records and concluded that

28   contradictions with the medical records, by themselves, are enough to meet the clear and

1    convincing standard. *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (*quoting*

2    *Carmickle*, 533 F.3d at 1161).

3    **B.  Relevant Testimony and ALJ Decision**

4         At the hearing, Plaintiff testified he had been unable to work since suffering injuries to his

5    left arm in a rollover accident in November 2018.  (AR 42).  His left arm was "almost inoperable

6    for the first couple of months" and he continued to suffer from "a consistent pain, numbness,

7    weakness" in his arm.  (AR 42).  He was unable to lift his arm high and was "not able to lift much

8    weight."  (AR 42).  His pain was usually at a 5 out of 10, with moving his arm increasing it to an

9    8 or higher.  (AR 43).  It was also hard for him to clench his left hand tightly.  (AR 44).  Using

10   both hands, he could lift 25 to 35 pounds, but if using only his left hand he would be limited to "a

11   gallon of milk so maybe about eight or nine pounds."  (AR 44).  Plaintiff also experienced neck

12   pain.  (AR 45-46).  Plaintiff spent "at least eight hours during the day lying or sitting down" due

13   to the Covid-19 pandemic and indicated he "would spend a lot more time going to the grocery

14   store and going here and going there" if it were not for the pandemic.  (AR 48).

15        In formulating the RFC, the ALJ concluded Plaintiff's "medically determinable

16   impairments could reasonably be expected to cause the alleged symptoms" but his statements

17   concerning the intensity, persistence, and limiting effects of his symptoms was "not entirely

18   consistent with the medical evidence and other evidence in the record."  (AR 19).  The ALJ

19   proceeded to summarize the medical records.  (AR 19-22).  After this discussion, the ALJ

20   provided the following explanation for discounting Plaintiff's subjective testimony:

21            As for the claimant's statements about the intensity, persistence,
22       and limiting effects of his or her symptoms, they are inconsistent
         because the medical evidence does not support his alleged
23       limitations. At his hearing, the claimant testified that he has
         continued weakness in his left arm and can only lift eight pounds.
24       Further, the claimant reported his clavicle had gotten better since
         surgery but that he still has neck pain with repetitive movement.
25       The claimant also reported right knee pain, mostly present when he
         climbs stairs. As for the claimant's allegations concerning his left
26       shoulder injury, the medical evidence reflects that the claimant's
         left shoulder fracture healed by the middle of 2019 (Exhibit 6F/3).
27       The claimant then sought surgery on his left shoulder but changed
         his mind at the last minute (Exhibit 11F/9). After cancelling his
28       surgery, the claimant's [sic] treated with Dr. Kim in the fall and

1
2
3
4
5
6
7
8
9

winter of 2019 (Exhibit 4F). Dr. Kim noted that the claimant still had good range of motion and use of his left shoulder and did not believe surgery would further improve the claimant's functioning. Moreover, Dr. Kim's treatment notes reflect the claimant retains normal functioning of the right arm and significant functioning of the left arm. These examinations reports are inconsistent with the claimant's testimony that he can only lift eight pounds with his left hand. I also note that the claimant's treatment history was sporadic as he stopped attending physical therapy on two occasions without completing treatment which Dr. Farias attributed to his social situation (Exhibits 11F/259; 12F/11). The claimant did not indicate why his social situation does not allow him to complete recommended medical treatment. Finally, the claimant reported he spends eight hours during the day either lying down or sitting down. However, the claimant did not report such limitations to his treating providers (Exhibit 11F). Overall, the medical evidence does not support the claimant's hearing testimony that he is more limited than set forth in the above residual functional capacity.

10
11

(AR 23).

12

## C. Arguments and Analysis

13
14
15
16
17
18
19
20
21
22
23

Plaintiff argues "the ALJ failed to set forth reasons, consistent with and supported by the evidence, for discounting Plaintiff's complaints of symptoms related to pain upon use of the left upper extremity." (Doc. 20 at 14).  Plaintiff argues the ALJ conflated his two shoulder injuries (the clavicle fracture and rotator cuff tear), and "failed to recognize that Plaintiff received what was perceived to be conflicting advice, which stalled the ultimate repair." (*Id.* at 15-16). Additionally, Plaintiff argues that not only did the ALJ "improperly rely solely on objective evidence, contrary to law and regulation, she also mischaracterize[d] that evidence and ignore[d] evidence in a failed attempt to minimize the connection between the objective findings and Plaintiff's complaints of work-limiting pain." (*Id.* at 16).  Plaintiff asserts the ALJ also "failed to accurately specify what evidence was inconsistent with Plaintiff's statements that he was unable to use the left arm for reaching forward or lifting more than eight or nine pounds." (*Id.* at 17).

24
25
26
27
28

Defendant responds that substantial evidence supports the ALJ's decision to discount Plaintiff's symptom testimony.  (Doc. 24 at 5).  Defendant argues "the ALJ did not reject all limitations regarding Plaintiff's left arm," but rather "discounted the *extreme* limitations Plaintiff alleged and instead included moderately restrictive limitations" that were consistent with the medical evidence.  (*Id.* at 5-6).

As an initial matter, the Court agrees with Defendant that the ALJ did not entirely discount Plaintiff's allegations of pain upon use of his left shoulder. Rather, the ALJ largely accommodated these limitations by limiting Plaintiff to sedentary work, which by definition requires lifting no more than 10 pounds at a time. (AR 18); *see* 20 C.F.R. § 404.1567(a). Additionally, the ALJ included additional restrictions on Plaintiff's use of his left arm, including only occasional pushing and pulling; frequent reaching in front but never overhead; and frequent but not constant handling and fingering of objects. (AR 18).

To the extent the ALJ rejected more extreme limitations indicated by Plaintiff's testimony, the ALJ provided the requisite clear and convincing reasons for discounting Plaintiff's testimony and those reasons are supported by substantial evidence. Although Plaintiff argues the ALJ conflated his two shoulder injuries, nothing in the decision suggests such given that the ALJ repeatedly referred to both the fracture and the tear in the left shoulder as separate injuries. (AR 19-22). A more accurate reading of the decision reveals the ALJ rejected Plaintiff's testimony because the medical evidence showed his shoulder fracture had healed by the middle of 2019; Plaintiff was scheduled for surgery related to the tear but changed his mind at the last minute; and Dr. Lim's notes indicated that despite the tear, Plaintiff had good range of motion, use of his left shoulder, and retained significant functioning in his left arm. (AR 23). The records cited by the ALJ confirm Plaintiff's fracture had in fact healed. (*See* AR 459 ("this fracture should be healed. No acute fracture, dislocation or subluxation"); AR 436 (noting "old-healed fracture of the left distal clavicle")). The records also confirm that despite the tear in the left shoulder, Plaintiff maintained "good range of motion and function of the left shoulder." (AR 436). Thus, the ALJ's conclusion that Plaintiff's testimony regarding his shoulder was not supported by the record is supported by substantial evidence.

The ALJ also cited Plaintiff's sporadic treatment history and the lack of similar statements regarding the intensity of his pain—specifically that he "spends eight hours during the day either lying down or sitting down"—as additional reasons for finding Plaintiff's testimony not credible. (AR 23). As noted by the ALJ, despite his complaints of pain, Plaintiff canceled his surgery "at the last minute." (AR 706; *see* AR 433 ("surgery not performed")). Similarly, Plaintiff "stopped

1   attending physical therapy on two occasions without completing treatment."  (AR 23, citing AR

2   956 (discharging Plaintiff from physical therapy after he "failed to follow-up with therapy"),

3   979).  Further, as the ALJ indicated, Plaintiff did not report such extreme limitations as needing to

4   lie or sit down for eight hours a day to any of his providers.  Both Plaintiff's "unexplained or

5   inadequately explained failure to seek treatment or to follow a prescribed course of treatment"

6   and his inconsistent statements are valid considerations in determining his credibility.  *Smolen*, 80

7   F.3d at 1284.

8          Because the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony,

9   and those reasons are supported by substantial evidence in the record, the ALJ did not err in

10  discounting Plaintiff's subjective testimony.

11  **IV.     CONCLUSION AND ORDER**

12         For the reasons stated above, the Court ORDERS as follows:

13  1.  Plaintiff's Motion for Summary Judgment (Doc. 20) is DENIED;

14  2.  The decision of the Commissioner is affirmed; and

15  3.  The Clerk of Court is DIRECTED to enter judgment in favor of Defendant, terminate any

16      deadlines, and close this case.

17  IT IS SO ORDERED.

18  Dated:  __**September 18, 2025**__

19                                          UNITED STATES MAGISTRATE JUDGE